IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MEL M. MARIN | ) CASE NO. 1:09CV2090 |
| Plaintiff, | ) |
| | ) JUDGE DONALD C. NUGENT |
| v. | ) |
| CLEVELAND CLINIC, *et al.* | ) MEMORANDUM OF OPINION |
| | ) <u>AND ORDER</u> |
| Defendants. | ) |

Plaintiff *pro se* Mel M. Marin brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332, against defendants Cleveland Clinic ("Clinic"), Ronan Factora, MD, Dan DiCello, Saurabh Kandapal, MD, Cuyahoga County Department of Senior and Adult Services, Sylvia Plyrade, Tom Watson, S. Cole, Judge Laura Gallagher, Kelly Perk, and Lt. Doe Sadaat. In addition to the § 1983 claim, his complaint contains state claims for invasion of privacy, interference with contract, loss of consortium, conspiracy and for an injunction.[1] Although the title of each cause of action states that the particular claim is against all defendants, some of the individual claims pertain only to certain defendants. The individual claims will be determined as to those named defendants.

Facts

Plaintiff alleges that on July 25, 2009, he brought his mother to the Clinic for medical tests pursuant to his power of attorney. He gave directions to the medical staff to provide previously

---

[1] Plaintiff states in his complaint that he resides in Pennsylvania while the defendants are citizens of Ohio and California. The Court notes that the caption of the complaint has an Ohio post office box.

prescribed medication which his mother received. Two days later, defendant Kandapal decided that the medication was harmful and refused to comply with plaintiff's demands under the power of attorney in violation of R.C. 1337.16 which provides that no physician or facility may require that a patient refrain from or revoke a power of attorney as a condition for being provided medical care. When he complained about malpractice and asked to see a supervisor, he was charged with a crime in retaliation. Police were called to unlawfully restrain and imprison him while his mother was given harmful drugs. He claims that he was injured by this unlawful imprisonment.

He alleges that thereafter, Kandapal, Factora, DiCello and the Clinic executed a scheme to cover up their unlawful assault and battery by saying that he was interfering with doctors by telling staff not to give medication that they wanted to administer and denying that he had a power of attorney. As part of the scheme, they enlisted Ombudsman DiCello to lie to him and act as if the Clinic was following the son's power of attorney. DiCello asked Factora to establish that his mother was incompetent because of the belief that plaintiff's sister held a power of attorney which would then become valid. Even though his mother was found competent after an interview, Factora found her incompetent. The Clinic forced her to take drugs to create dementia. Plaintiff was prevented from removing his mother from the Clinic because they had started an investigation by county Adult Protective Services. Later, the police seized and removed him from the hospital and told him if he again says he has a power of attorney, they would arrest him. Since that time, his mother has been held against her will and the Clinic staff has refused to tell him where she was taken. The Civil Rights Act was allegedly violated by seizing, assaulting and battering plaintiff in retaliation for his execution of his mother's power of attorney.

Next, plaintiff asserts invasion of privacy. The Clinic allegedly enlisted the aid of defendant

2

Case: 1:09-cv-02090-DCN Doc #: 4 Filed: 01/29/10 3 of 13. PageID #: 57

Lt. Sadaat, a California police officer, in finding plaintiff's sister and telling her of her mother's location. Lt. Sadaat willingly gave his sister the location of her mother without asking plaintiff's approval. Defendants allegedly knew that his mother was afraid of his sister because he had told the staff that his sister had tried to kill her mother the previous year by coming to a San Diego hospital to attempt to force that facility to withdraw medication and presenting the hospital with an illegal do not resuscitate order. The sister's conduct was allegedly motivated because the sister had hired an attorney to engineer a divorce of her mother and father without telling her mother in order for her to get half of community property. The sister hid the mother for ten years to prevent her father and brother from rescuing the mother. The California police officer allegedly acted as an agent for the Clinic giving the mother's location and phone, thereby giving private personal and medical information to a third party not authorized to receive it. As a result plaintiff's mother was allegedly given against her will to her daughter and remains imprisoned to this day.

Plaintiff has included an interference with contract claim against the Cuyahoga County Department of Senior and Adult Services and employee defendants Plyrade, Watson, Cole and the Clinic. They allegedly allowed the Clinic to serve notice of an investigation which defendants claim authorizes them under Ohio law to seize his mother against her will. However, Ohio law allegedly only allows holding a patient after a hearing and court order and only if the patient is incapacitated. R.C. 5101.65. Defendants did not seek a court order because they knew his mother was not incompetent. Thus, defendants allegedly interfered with his power of attorney and threatened him with jail if he exercised that power.

Plaintiff has another claim for interference with contract against Probate Judge Laura Gallagher and County Prosecutor Kelly Perk. He states that defendants enlisted the aid of County

Prosecutor Perk and Judge Gallagher to try to get a court order for seizure weeks after the actual alleged seizure. These defendants were allegedly given legal papers plaintiff had given to defendants showing that seizure was illegal and that the court had no jurisdiction. Nevertheless these defendants agreed to hold a hearing without giving notice to plaintiff or his mother, not allowing a court appointed attorney and issuing an order seizing his mother and moving her secretly out of the Clinic and into the custody of her daughter who had tried to kill her. Their conduct was allegedly for the purpose of helping the Clinic create a justification for the punishment of his mother and son for the exercise of the power of attorney.

Finally, plaintiff alleges conspiracy and requests an injunction barring defendants from refusing to provide all their files to him and directing them to find and protect his mother until he can find her and execute her wishes.

## Analysis

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). For the following reasons, the Court finds the claim asserted in this action satisfies these criterion.

## Section 1983

In *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), the Supreme Court stated that "the initial inquiry [in a section 1983 action] must focus on whether the two essential elements ... are present: (1) whether the conduct complained of was committed by a person acting under color of state law;

and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."

Plaintiff alleges that the Clinic and its medical personnel refused to honor his power of attorney for his mother in violation of R.C. 1337.16 which provides that no physician or facility may require that a patient refrain from or revoke a power of attorney as a condition for being provided medical care. Violation of state law does not constitute a constitutional violation or violation of a law of the United States. *Monroe v. McNairy County, Tenn.*, 520 F.Supp.2d 917, 920 (W.D. Tenn., 2007)(citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Therefore, plaintiff has not stated a § 1983 cause of action against the Clinic, Kandapal, Factora, and DiCello for refusing to honor the power of attorney.

Plaintiff alleges that Clinic police were called to unlawfully restrain and imprison him while his mother was given harmful drugs. He claims that he was injured by this unlawful imprisonment. Later, police seized and removed him from the hospital. The person acting under color of law is usually a state or local government official or employee. *Doyle v. Schumann*, 2008 WL 397588 * 3 (N.D. Ohio, Feb. 11, 2008). A plaintiff does not have a cause of action under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)(citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). *Walker v. Schaeffer*, 854 F2d 138, 142 (6th Cir. 1988). Plaintiff was not arrested. He was merely forced to leave the hospital which Clinic police have the authority to do. There is nothing in the complaint indicating that plaintiff's rights were violated under the United States Constitution or laws of the United States by the Clinic. Thus, plaintiff has not stated a cause of action under § 1983.

5

### Interference With Contract

Plaintiff included Judge Laura Gallagher and Assistant County Prosecutor Kelly Perk in his interference with contract claim. It is well established that judges are immune from liability for actions taken within the scope of their official duties. *Pierson v. Ray*, 386 U.S. 547 (1967). This is true even if a judge acts erroneously, corruptly, or in excess of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349 (1978). When the function complained of is truly a judicial act, judicial immunity applies. Despite plaintiff's assertion to the contrary, there are no facts alleged reasonably suggesting Judge Gallagher acted outside the scope of her official duties. *Yarbrough v. Garrett*, 579 F.Supp.2d 856, 860 (E.D. Mich., 2008)(citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). *See Kelly v. Whiting*, 17 Ohio St.3d 91, 94 (1985) (it is well-settled that a judge is immune from civil liability for state torts for actions taken in his judicial capacity when jurisdiction is proper).

Also, prosecutors are absolutely immune from liability under § 1983 for their conduct as long as that conduct is intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "The analytical key to prosecutorial immunity ... is advocacy-whether the actions in question are those of an advocate." *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (citations and internal quotation marks omitted). At the time in question, Kelly Perk was acting within the scope of her duties as a prosecutor. *Hunter v. City of Middletown*, 31 Ohio App.3d 109, 110 (Ohio App. 12th Dist., 1986) (state law claims against a prosecutor are barred by absolute immunity).

Therefore, Judge Laura Gallagher and Assistant County Prosecutor Kelly Perk have absolute immunity.

Plaintiff has alleged that the Cuyahoga County Department of Senior and Adult Services and

employee defendants Plyrade, Watson, Cole and the Clinic interfered with a contract consisting of his power of attorney by illegally serving notice of an investigation which defendants claim authorized them under Ohio law to seize his mother against her will. Ohio recognizes the tort of tortious interference with a contract. The Supreme Court of Ohio adopted Restatement of the Law 2d, Torts (1979) Section 766, in *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995). Section 766 of the Restatement provides as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

In order to prove tortious interference with contract, a plaintiff must show: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 172 (1999).

The Cuyahoga County Department of Senior and Adult Services is a county agency created in 1992 as is the Cuyahoga County Department of Job and Family Services. Whether or not a county agency has the capacity to be sued is governed by state law. *See* Fed. R. Civ. P. 17(b). Under Ohio law, neither Cuyahoga County Job and Family Services nor Cuyahoga County is *sui juris. Lowe v. Hamilton County Dept. of Job and Family Services*, 2008 WL 816669 * 2 (S.D. Ohio, Mar. 23, 2008) (citing *McGuire v. Ameritech Servs., Inc.*, 253 F.Supp.2d 988, 1015 (S.D. Ohio, 2003). Counties may be held accountable through their elected representatives, i.e., their commissioners. Plaintiff has not included the Cuyahoga County Commissioners as parties to this action. In any event, the county would have immunity pursuant to R.C. 2744.03(A) which provides in pertinent part:

7

> In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.

The employees of the Cuyahoga County Department of Senior and Adult Services were acting in accordance with their responsibilities of the agency. The Cuyahoga County Department of Senior and Adult Services is a county agency just as is Cuyahoga County Job and Family Services and should also be immune from liability.

Plaintiff sued Plyrade, Watson and Cole, employees of the Cuyahoga County Department of Senior and Adult Services in their official capacities only. "Official-capacity suits ... 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (quoting *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691 n. 55 (1978)). Plaintiff's official capacity claims against these defendants are, therefore, actually against the county. *See Lambert v. Hartman,* 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county). Therefore, Plyrade, Watson and Cole do not have the capacity to be sued.

Plaintiff alleged that the Clinic, and its named employees, Factora, Kandapal and DiCello, interfered with his power of attorney by seizing, assaulting and battering plaintiff in retaliation for his execution of his mother's power of attorney. R.C. 1337.16 provides:

8

> (B)(1) Subject to division (B)(2) of this section, an attending physician of a principal or a health care facility in which a principal is confined may refuse to comply or allow compliance with the instructions of an attorney in fact under a durable power of attorney for health care on the basis of a matter of conscience or on another basis. An employee or agent of an attending physician of a principal or of a health care facility in which a principal is confined may refuse to comply with the instructions of an attorney in fact under a durable power of attorney for health care on the basis of a matter of conscience.
> (2)(a) An attending physician of a principal who, or health care facility in which a principal is confined that, is not willing or not able to comply or allow compliance with the instructions of an attorney in fact under a durable power of attorney for health care to use or continue, or to withhold or withdraw, health care that were [sic] given under division (A) of section 1337.13 of the Revised Code, or with any probate court reevaluation order issued pursuant to division (D)(6) of this section, shall not prevent or attempt to prevent, or unreasonably delay or attempt to unreasonably delay, the transfer of the principal to the care of a physician who, or a health care facility that, is willing and able to so comply or allow compliance.

Ohio law allows a doctor or health care facility to refuse to comply with the instructions of an attorney in fact for any basis. A doctor or health care facility unwilling to follow an attorney in fact's instructions, must not prevent or delay the transfer of the principal (plaintiff's mother) to the care of another doctor willing to comply. Plaintiff had the option to transfer his mother's care to another doctor or health care facility. There is no indication that he wanted to do so.

Further, R.C. 1337.16(C) provides:

> Sections 1337.11 to 1337.17 of the Revised Code and a durable power of attorney for health care created under section 1337.12 of the Revised Code do not affect or limit the authority of a physician or a health care facility to provide or not to provide health care to a person in accordance with reasonable medical standards applicable in an emergency situation.

Under R.C. 1337.16(C), a doctor or health care facility is not affected by a power of attorney during an emergency situation. If an emergency situation existed during the events set forth in the complaint, the Clinic and its doctors did not have to obey plaintiff's instructions. For the reasons discussed above, plaintiff does not have a cause of action against the Clinic and its named employees, Factora,

9

Kandapal and DiCello.

### Invasion of Privacy

Plaintiff alleges that Clinic enlisted the aid of defendant Lt. Sadaat, a California police officer, in finding plaintiff's sister and telling her of her mother's location. Lt. Sadaat willingly gave his sister the location of her mother without asking plaintiff's approval. The Ohio Supreme Court has held that an independent tort exists under Ohio law for the unauthorized, unprivileged disclosure of nonpublic medical information to a third party that a physician or hospital has learned through a physician-patient relationship. *Kutnick v. Fischer*, 2004 WL 2251799 * 6 (Ohio App. 8th Dist., Oct. 7, 2004) (citing *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 (1999)), paragraph one of the syllabus, This duty of confidentiality is not absolute. "[A] physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality." *Biddle*, 86 Ohio St.3d at 402. Furthermore, the court stated: "special situations may exist where the interest of the public, the patient, the physician, or a third person are of sufficient importance to justify the creation of a conditional or qualified privilege to disclose in the absence of any statutory mandate or common-law duty." *Id*. The Clinic did not give personal medical information to Lt. Sadaat. It merely gave plaintiff's mother's location to his sister. This is not confidential information that is subject to the doctor patient privilege. It follows that Lt. Sadaat is not liable. Thus, the invasion of privacy claim against the Clinic and Lt. Sadaat is dismissed.

## Conspiracy

Plaintiff alleges that all defendants acted in concert and cooperation with the Clinic staff to harm his mother and son and punish both for the son's lawful exercise of his power of attorney. Under Ohio law, in order to establish a civil conspiracy claim, there must be an underlying unlawful act and "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1989); *Doane v. Givaudan Flavors Corp.*, 184 Ohio App.3d 26, 37(Ohio App. 1st Dist., Sep. 25 2009). All defendants have been dismissed for various reason. Either immunity applies or the cause of action has been disposed of. Therefore, plaintiff's conspiracy claim has no merit.

## Consortium

Since no claims or defendants remain, the claim for loss of consortium has no merit.

## Injunction

Injunctive relief has been requested against all defendants. Plaintiff wants them enjoined from refusing to provide all their files. He claims entitlement to all of his mother's hospital, court, county and transportation records. Apparently he is trying to find his mother. There is no indication Lt. Sadaat has any knowledge of plaintiff's mother's location. He is not involved in the claim for injunction.

In *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), the court concluded "that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *See also Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993); *Sevier v. Turner*, 742 F.2d 262, 269 (6th Cir.1984). The availability of prospective relief against a judicial officer is,

however, subject to two requirements. *Pulliam,* 466 U.S. at 537. First, the plaintiff must demonstrate that there is no adequate remedy at law. *Id.* Second, the plaintiff must show a "serious risk of irreparable harm ." *Id.*; *Raymond v. Moyer,* 2006 WL 1735368 * 3 (S.D. Ohio, Jun. 22, 2006). Rule 11.1 of the Rules of the Cuyahoga County Court of Common Pleas, Probate Division shows that there is no provision requiring secrecy of probate records. Recording of proceedings is allowed. Plaintiff may obtain these records without aid of this Court. Therefore, plaintiff has failed to show the existence of facts giving rise to an inference of a serious risk of irreparable harm. Judge Gallagher is entitled to judicial immunity and injunctive relief is not available. *See Doyle v. Pollitt,* 2009 WL 2146260 * 4 (S.D. Ohio, Jul. 15, 2009) (state judges are absolutely immune to § 1983 actions seeking injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable).

Plaintiff has not explained how the prosecutor's file would aid him in proceeding with this case. In his claim against Assistant County Prosecutor Kelly Perk, he alleges that as a result of the court hearing, custody of his mother was given to his sister. She would not have any other information. As the prosecutor is immune from suit, her file would not benefit him. Therefore, plaintiff has not established that an injunction against Kelly Perk is appropriate.

The same reasoning applies to the other defendants. Since plaintiff's sister, who lives in California, allegedly has custody of their mother, these defendants would not have information about the mother's location. Once she left the Clinic, the Clinic's responsibility terminated.

### Conclusion

In summary, plaintiff's mother appeared at the Clinic, maybe in an emergency situation. The Clinic and it employees refused to obey plaintiff's instructions even though he had a power of attorney, which under Ohio law, they had the authority to do. When plaintiff vehemently objected,

he was removed without being arrested, from the premises, again under the Clinic's authority. The Court concludes that plaintiff has not stated a cause of action.

Accordingly, plaintiff's Motion to Proceed In Forma Pauperis is granted. This action is dismissed under 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

Date: January 29, 2010

Donald C. Nugent
JUDGE DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

---

28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

13